UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DANIEL LEE DAVIS,

    Petitioner,

v.                                        CASE NO. 6:08-cv-765-Orl-31GJK

ATTORNEY GENERAL, STATE
 OF FLORIDA, et al.,

    Respondents.
_____/

## **ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 10). Petitioner filed a reply to the response (Doc. No. 17).

Petitioner alleges seven claims for relief in his habeas petition: 1) counsel was ineffective for failing to request a competency hearing; 2) counsel was ineffective for preventing Petitioner from testifying "because of his Vietnam service"; 3) he was not properly informed of his *Miranda*[1] rights; 4) counsel was ineffective for failing to investigate witnesses who were relevant to the defense; 5) counsel was ineffective for failing to secure

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

a defense expert to testify regarding Luminol testing; 6) counsel was ineffective for failing to allow Petitioner's two brothers and two sons to testify to "buttress the defense"; and 7) counsel was ineffective for failing to call three doctors who had been treating his wife to "buttress the defense."

## I. Procedural History

Petitioner was charged by indictment with first degree premeditated murder. A jury trial was held, and Petitioner was found guilty as charged. The trial court adjudicated Petitioner guilty of the crime and sentenced him to life imprisonment. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, raising seven claims. The trial court entered an order granting an evidentiary hearing as to grounds one and two and finding that the remaining grounds were refuted by the record. After the evidentiary hearing, the trial court entered an order denying the remaining claims. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

---

[2]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.      *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

C.  *Exhaustion and Procedural Default*

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or

>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

>> [c]omity concerns dictate that the requirement of exhaustion is not satisfied

> by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*

*v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## III. Analysis

### A. Claim One

According to Petitioner, counsel was ineffective for failing to request a competency hearing. This claim was raised in Petitioner's Rule 3.850 motion, and the trial court denied the claim, finding that Petitioner had not shown deficient performance on the part of counsel or prejudice.

Petitioner's counsel, J. Randall Moore, testified at the evidentiary hearing that the defense hired Dr. William Reibsame to perform a competency evaluation on Petitioner. (Appendix I, Transcript of Evidentiary Hearing at 16.) Dr. Reibsame performed the evaluation and determined that Petitioner was competent. *Id*. at 17. Dr. Reibsame spent ten to twelve hours evaluating Petitioner, *id*. at 29, and he evaluated him for competency, sanity, and mitigation. *Id*. at 19. Petitioner was aware of the charges against him and the seriousness of those charges. *Id*. at 24-25. In addition, Petitioner spoke rationally and coherently, and he did not appear paranoid. *Id*. at 25.

Mr. Moore also testified that more time would have been needed to develop a possible insanity defense but that Petitioner was adamant about a speedy trial. *Id*. at 7-8. Mr. Moore did not believe that a competency hearing was necessary, and he felt that he was ethically unable to raise the issue based on Dr. Reibsame's opinion and the lack of supporting facts. *Id*. at 7-9.

In addition, Mr. Moore testified that Petitioner's defense was that he did not commit

8

the murder and that it would have been "awkward to raise an insanity defense when [Petitioner was] claiming he didn't do it." *Id*. at 10.

Under the circumstances, it is clear that Petitioner's counsel acted reasonably. He had Petitioner evaluated for competency, and Petitioner was found competent by an expert. Petitioner's counsel made the reasonable strategic decision to forego this issue. Moreover, the Court finds that there has been no showing of prejudice. Thus, this claim is denied.

B.   *Claim Two*

Petitioner asserts that counsel was ineffective for preventing Petitioner from testifying "because of his Vietnam service." This claim is vaguely presented, but it appears that Petitioner's counsel allegedly told Petitioner that the only way to keep information regarding Petitioner's Vietnam service excluded from the trial was if Petitioner did not testify. Ostensibly, Petitioner did not want the jury to hear about his "killing of enemy soldiers." This claim was raised in Petitioner's Rule 3.850 motion and was denied.

Contrary to Petitioner's assertion, the "Vietnam evidence" came in during the State's case-in-chief, so the introduction of this evidence cannot reasonably be the reason why Petitioner did not testify. *See* Appendix C, Transcript of Trial at 1510. Moreover, at the evidentiary hearing, Petitioner's counsel testified that he always makes sure the defendant understands that he or she has a right to testify and that it is the defendant's decision, not counsel's, as to whether to do so. (Appendix I, Transcript of Evidentiary Hearing at 680.) Petitioner's counsel also also testified that he would have prepared Petitioner with regard

9

to his trial testimony if Petitioner had decided to testify. *Id*. at 680-81.

Further, at trial, the trial court fully informed Petitioner of his right to testify, and Petitioner stated that he had spoken with his attorney about whether to testify and that he had decided not to do so. Appendix C, Transcript of Trial at 1913. Under the circumstances, the Court finds that Petitioner has not shown that counsel acted unreasonably with regard to this matter or that he sustained prejudice.

## C.   *Claim Three*

Petitioner asserts that he was not properly informed of his *Miranda* rights. Petitioner's claim is procedurally barred because the trial court so determined in its order denying Petitioner's motion for postconviction relief, and the state appellate court affirmed *per curiam*.[4] The denial on procedural bar grounds was a correct application of Florida law.

In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim is procedurally barred.

## D.   *Claims Four and Six*

Petitioner asserts in claim four that counsel was ineffective for failing to investigate

---

[4]A *per curiam* affirmance of a trial court's finding of a procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir.), *cert. denied*, 498 U.S. 832 (1990).

10

witnesses who were relevant to the defense and in claim six that counsel was ineffective for failing to allow Petitioner's two brothers and two sons to testify to "buttress the defense."

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Petitioner has failed to present evidence of actual testimony or any affidavit of alleged testimony from these witnesses. Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Moreover, "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perception of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." *Lema v. United States,* 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted). Petitioner has failed to advance a persuasive argument that trial counsel's decision not to call these witnesses was unreasonable or that this decision can be construed as conduct outside the wide range of professional representation. "Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's

11

witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence." *Id.* at 54.

The Court finds that Petitioner has not shown deficient performance on the part of counsel or that he sustained prejudice with regard to these matters, and claims four and six are without merit.

E.   *Claim Five*

Petitioner states that counsel was ineffective for failing to secure a defense expert to testify regarding Luminol testing.[5]

Immediately prior to trial, Petitioner's counsel informed the trial court that there had not been sufficient time to obtain an expert in order to testify as to the reliability of the Luminol testing. (Appendix C, Transcript of Trial at 52.) The trial court denied counsel's motion in limine regarding the Luminol testing, *id.* at 53, but offered to continue the trial in order to allow counsel the opportunity to obtain an expert witness. *Id.* at 57. The trial court asked Petitioner whether he would like to continue the trial in order to obtain the expert, and Petitioner indicated "let's go on with the trial." *Id.* at 58.

Because Petitioner insisted on proceeding with the trial, it is clear that he has not shown that counsel acted unreasonably with regard to this matter. Further, there was no showing of prejudice. Therefore, this claim is denied.

---

[5]Luminol is used by crime scene investigators to test for the presence of blood.

## F. Claim Seven

Petitioner states that counsel was ineffective for failing to call three doctors who had been treating his wife to "buttress the defense." Presumably, these witnesses would have testified that the victim (Petitioner's wife) was ill.

During Petitioner's interview with Detectives Butler and Boyer, which was introduced at trial, Petitioner stated that "I didn't know [the victim's] life was coming to an end" and that "I have no medical information that tells me her life was coming to an end." (Appendix C, Transcript of Trial at 1843.) Accordingly, Petitioner's testimony negates his assertion that he was aware of medical problems surrounding the victim.

Additionally, Petitioner has failed to present evidence of actual testimony or any affidavit of alleged testimony from these witnesses. Thus, he has not made the requisite factual showing, and his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

The Court finds that Petitioner has not shown deficient performance on the part of counsel or that he sustained prejudice.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Daniel Lee Davis is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly, and is directed to

close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 6th day of August, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sa 8/6
Counsel of Record
Daniel Lee Davis